**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **DARRELL S. NEWCOMB**, *et al.*, | * | |
| **Plaintiffs**, | * | |
| **v.** | * | **Case No.: GJH-19-2046** |
| **NIRAV BABU**, *et al.*, | * | |
| **Defendants**. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Darrell S. Newcomb, individually and as sole trustee of the Ethel H. Newcomb Living Trust and co-trustee of the Darrell S. Newcomb Living Trust, and Karen R. Newcomb, individually and as co-trustee of the Darrell S. Newcomb Living Trust, brought this civil action against Defendants Nirav Babu, Bella Batra, DH Investments, LLC ("DH Investments"), Bhupesh Babu, Refunds Plus, LLC ("Refunds Plus"), CJC Financial, LLC ("CJC Financial"), Admas, Inc. ("Admas"), Matthew Herman, Charles Verghese, Chelsea M. Rebeck, J.D., P.C. (the "Rebeck Firm"), Beverly Branch, and Adanu Kidane.[1] ECF No. 1. Plaintiffs allege claims for unjust enrichment, conversion, fraud, and civil conspiracy based on the misappropriation of four million dollars of Plaintiffs' money. *Id.* Pending before the Court are a Motion to Dismiss filed by Defendant Herman, ECF No. 28, and a Motion to Dismiss filed by the remaining Defendants, ECF No. 27. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant Herman's Motion to Dismiss is granted, and the Motion to Dismiss filed by the remaining Defendants is granted, in part, and denied, in part.

---

[1] Chelsea Rebeck and Elizabeth Pal were originally named as Defendants but have since been removed from the case. ECF No. 25.

## I.    BACKGROUND[2]

Plaintiffs were retail brokerage customers of Morgan Stanley, a broker-dealer located in Bethesda, Maryland.[3] ECF No. 1 ¶ 22. Plaintiffs' Morgan Stanley accounts were serviced by their financial advisor, Sumitro Pal. *Id.* ¶ 23. In September 2017, Defendants Herman and Babu[4] contacted Pal to ask him to assist them in raising funds for a real estate project in Baltimore, Maryland. *Id.* ¶ 24. To solicit investors, Pal, Herman, and Babu created various marketing fliers, which touted the project; Herman's company, Barrus Real Estate Group, was featured prominently on those fliers. *Id.* ¶¶ 26, 27.

In October 2017, Pal showed Ms. Newcomb the various marketing materials prepared by Herman and Babu and solicited Plaintiffs to invest in the real estate project. *Id.* ¶ 28. He represented to Plaintiffs that several of his clients had already invested in the project, that he knew the developer well, and that Plaintiffs' investment would be secured. *Id.* ¶ 29. Pal recommended that Plaintiffs borrow four million dollars at a lower interest rate by taking out a securities backed loan from Morgan Stanley so that Plaintiffs could make money on the interest rate spread (i.e., the cost of borrowing from Morgan Stanley was lower than the cost of lending to the real estate developer). *Id.* ¶¶ 31, 32.

On October 19, 2017, based on Pal's representations, Plaintiffs approved two separate two million dollar transfers (the "Loan") from their Morgan Stanley account to a Wells Fargo account owned by Defendant DH Investments (the "DH Account"), a limited liability company

---

[2] Unless otherwise stated, the background facts are taken from Plaintiffs' Complaint, ECF No. 1, and are presumed to be true.

[3] The Complaint only identifies Morgan Stanley as the "Broker-Dealer." However, documents that are attached to one of the Motions to Dismiss, *see* ECF Nos. 27-2, 27-3, and are properly considered by the Court, identify the Broker-Dealer as Morgan Stanley. Moreover, in their response, Plaintiffs do not dispute that the Broker-Dealer is Morgan Stanley. ECF No. 33 at 3 n.1.

[4] Defendant Nirav Babu will be referred to as "Babu." Defendant Bhupesh Babu will be referred to using his first and last name.

owned by Defendant Babu and attorney Chelsea Rebeck. *Id.* ¶¶ 10, 33. Plaintiffs had no written contract with DH Investments with respect to the Loan. *Id.* ¶ 113. At the time of the transfers, Morgan Stanley's compliance department flagged the transfers as suspicious; Pal assured the compliance department that the transfers were legitimate and Plaintiffs verified that the funds were being wired for a commercial real estate transaction and for no other purpose. *Id.* ¶¶ 35, 36.

Approximately four months after the transfer, Plaintiffs learned that Pal had taken his own life. *Id.* ¶ 38. Upon his death, his assets, including monies received from Defendants Babu and DH Investments, were transferred to his wife, Elizabeth Pal. *Id.* ¶ 39. Shortly after Pal's death, Plaintiffs contacted Morgan Stanley for an update on their holdings, including the Loan. *Id.* ¶ 41. Morgan Stanley initially told Plaintiffs that it investigated the Loan and was unaware of the terms of the transaction. *Id.* ¶ 42. Shortly after their inquiry, Plaintiffs filed an arbitration claim through the Financial Industry Regulatory Authority ("FINRA") alleging conversion, negligent supervision, common law fraud, breach of contract, breach of fiduciary duty, unsuitability, and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act and Virginia Securities Act against Morgan Stanley related to the Loan (the "FINRA Arbitration"). *Id.* ¶ 44; *see also* ECF No. 27-2.[5] As part of the FINRA Arbitration, Morgan Stanley filed a third-party complaint for indemnification or contribution against Defendant Babu. *See Morgan Stanley v. Babu*, No. GJH-19-489, ECF No. 14-4 (D. Md.). The FINRA Arbitration has since been settled between Morgan Stanley and Plaintiffs for $2.5 million, *see* ECF No. 27-3 at 10–11, but through the Arbitration, Plaintiffs acquired DH Investments' bank records, ECF No. 1 ¶ 45.

---

[5] In reviewing a motion to dismiss, the Court may take judicial notice of matters of public record and consider documents referenced in the complaint and those attached to the motion to dismiss so long as they are integral to the complaint and authentic. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

The bank records revealed that the Loan was never used to fund a real estate project. *Id.* ¶ 47. Instead, funds from the DH Account were used to fund Defendant Babu's personal expenses and unrelated business ventures. Between October 23, 2017 and April 10, 2018, Defendant Babu used $559,518.01 from the DH Account to pay his own American Express credit card bills, and on December 15, 2017 and January 31, 2018, he used $53,640.10 from the DH Account to pay credit card bills for his girlfriend, Defendant Batra. *Id.* ¶¶ 51, 52. Between November 21, 2017 and April 13, 2018, he also transferred $128,745.00 from the DH Account to personal accounts belonging to himself, Defendant Batra, and his father, Defendant Bhupesh Babu. *Id.* ¶¶ 53–55.

Defendant Babu also used funds from the DH Account to loan money to Defendant Refunds Plus, a tax refund product provider that he operated along with Defendant Verghese. *Id.* ¶¶ 58–63. Between November 17, 2017 and March 21, 2018, a total of $2,413,039.12 was transferred from the DH Account to an account owned by Refund Plus. *Id.* ¶¶ 64–67. Refunds Plus subsequently repaid part, but not all, of the loan. *Id.* ¶ 68. In addition to the funds loaned to Refunds Plus, $7,500.00 was transferred from the DH Account to a bank account owned by Defendant Verghese. *Id.* ¶ 70.

Defendant Babu also transferred funds from the DH Account to individuals and entities related to his tax preparation business. *Id.* ¶ 71. Between January 11, 2018 and April 5, 2018, Defendant Babu transferred $525,000.00 from the DH Account to a bank account owned by Defendant Rebeck Firm, a law and tax preparation firm that had previously represented Defendants Babu, Refunds Plus, and Verghese in a 2015 lawsuit in the Southern District of Ohio. *Id.* ¶¶ 71–73, 98, 100. On August 23, 2018, counsel for Plaintiffs wrote to attorney Chelsea Rebeck to inform her that DH Investments and Mr. Babu had misappropriated monies belonging to Plaintiffs and stated, "[i]f these funds are in your firm's escrow account, we demand that they

are immediately returned to the Newcombs." *Id.* ¶ 74. Ms. Rebeck denied the request, stating that she found the request "improper." *Id.* ¶ 75.

Between November 22, 2017 and February 6, 2018, Defendant Babu transferred $1,250,000.00 in loans from the DH Account to an account owned by Defendant Admas, a company that provides tax refund advances. *Id.* ¶ 77. Between December 20, 2017 and February 20, 2018, he also transferred $1,650,000.00 in loans from the DH Account to an account owned by Defendant CJC. *Id.* ¶ 79. Defendants Admas and CJC have since repaid part, but not all, of the loans they received. *Id.* ¶¶ 78, 80.

Defendant Babu also transferred funds to two tax preparers. *Id.* ¶¶ 81, 83. Between December 11, 2017 and March 9, 2018, he transferred $23,300.00 from the DH Account to Defendant Branch, a tax preparer in Baltimore, Maryland, *id.* ¶¶ 81, 82, and between December 1, 2017 and February 7, 2018, he transferred $30,000.00 from the DH Account to Defendant Kidane, a tax preparer in the Dallas-Fort Worth area of Texas, *id.* ¶¶ 83, 84.

Finally, on March 23, 2018, Defendant DH Investments used funds from the DH Account to repay a $1,250,000.00 loan it had received from Defendant Herman in December 2017. *Id.* ¶¶ 87, 90. On March 23, 2018, DH Investments transferred $1,312,500.00 from the DH Account to Defendant Herman's bank account; the sum represented the original $1,250,000.00 loan and $62,500.00 in interest. *Id.* ¶ 90.

By May 2018, the DH Account had a balance near $0.00. *Id.* ¶ 102. Plaintiffs never recovered the principal Loan amount or any interest on that amount. *Id.* ¶ 101.

On July 12, 2019, Plaintiffs filed a Complaint in this Court alleging unjust enrichment against all Defendants in Count I; conversion against Defendants Babu, DH Investments, Refunds Plus, and Rebeck Firm in Count II; fraud against Defendants Babu, Herman, and DH

Investments in Count III; and civil conspiracy against Defendants Babu and Herman in Count IV. ECF No. 1. On October 11, 2019, Defendants filed two separate Motions to Dismiss, one by Defendant Herman and one by the remaining Defendants. ECF Nos. 27, 28. Plaintiffs filed a consolidated response on November 8, 2019, ECF No. 33, and Defendants filed two separate replies on December 6, 2019, ECF Nos. 35, 36.

## II.    DISCUSSION

### A.  Failure to State a Claim

Defendants contend that the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 (stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must

accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Although pleadings of self-represented litigants must be accorded liberal construction, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a cognizable claim, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).[6]

### i.      Unjust Enrichment (Count I)

Plaintiffs allege that Defendants have been unjustly enriched because they received funds that were misappropriated from Plaintiffs without providing anything of value in return. "[A] claim for unjust enrichment requires the plaintiff to establish three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of or appreciated the benefit; and (3) the defendant accepted or retained the benefit under such circumstances that it would be inequitable to allow the defendant to retain the benefit without paying value in return." *Hobbs v.*

---

[6] In their response to the Motions to Dismiss, Plaintiffs contend that the Court is permitted to convert the Motions to Dismiss into Motions for Summary Judgment because Defendants have presented evidence outside the four corners of the Complaint. ECF No. 33 at 6. The only evidence that the Court has considered outside the four corners of the Complaint, however, is the Statement of Claim in the FINRA Arbitration, *see* ECF No. 27-2, and the Investment Advisor Representative Public Disclosure Report for Pal that reflects the allegations in the FINRA Arbitration and that Plaintiffs settled the FINRA Arbitration with Morgan Stanley for $2.5 million, *see* ECF No. 27-3. Both documents were publicly filed and relate to the FINRA Arbitration, which was referenced in and integral to the Complaint. Plaintiffs due not appear to contest the authenticity of the documents, so the Court can properly consider them in support of the Motions to Dismiss without converting the Motions into Motions for Summary Judgment. *See U.S. ex rel. Oberg*, 745 F.3d at 136.

*St. Martin*, 320 F. Supp. 3d 748, 752 (D. Md. 2018) (citing *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007)). "[W]hile 'a person is enriched if he has received a benefit,' the law does not consider him *unjustly enriched* unless 'the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust.'" *First Nat'l Bank of Md. v. Shpritz*, 63 Md. App. 623, 640–41 (Md. Ct. Spec. App. 1985) (quoting *Hamilton v. Bd. of Educ.*, 233 Md. 196, 201 (1963)). Moreover, "[t]he restitution claim … is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Hill*, 40 Md. at 296 (quoting *Mass Transit Admin. v. Granite Const. Co.*, 57 Md. App. 766, 775 (Md. Ct. Spec. App. 1984)) (internal quotation marks omitted).

### a. DH Investments

Plaintiffs sufficiently state a claim for unjust enrichment against Defendant DH Investments. The Complaint alleges that Plaintiffs conferred a benefit upon DH Investments in the form of the Loan that was transferred to the DH Account, DH Investments had knowledge of the benefit because four million dollars was placed in its bank account and it subsequently distributed those funds, and the circumstances of the receipt of the Loan are such that it would be unjust for DH Investments to retain the benefit because DH Investments chose to distribute those funds for personal and business purposes even though it did not exchange anything of value for the funds. ECF No. 1 ¶¶ 33, 49, 110–112; *see generally* ECF No. 1 (describing the manner in which funds from the DH Account were distributed). At this stage, these allegations are sufficient to state a claim.

Nonetheless, Defendant contends that the unjust enrichment claim must fail. First, it argues that Plaintiffs could not have conferred a benefit upon DH Investments because the parties never had any direct communication. ECF No. 27-1 at 16. Even if this is true, "a cause of

action for unjust enrichment may lie against a transferee with whom the plaintiff had no contract, transaction, or dealing, either directly or indirectly." *See Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 271 (Md. Ct. Spec. App. 2007). Rather, the "dispositive question" is whether DH Investments, "as the defendant transferee, paid value for the funds transferred to [it]…." *See id.* at 274–76 ("If the misappropriated Bank funds can be traced to [defendant's] account, there was no consideration for such deposits, and there is no other defense to the Bank's claim for restitution, then the Bank could prevail on its unjust enrichment claim."). Here, there is no allegation that DH Investments provided any value in exchange for the Loan, and therefore the Complaint sufficiently alleges that Plaintiffs conferred a benefit upon DH Investments.

Next, Defendant contends that it was not Plaintiffs that conferred the benefit, but rather Morgan Stanley through its agent Pal, and that Defendant had no knowledge that the Loan monies belonged to Plaintiffs or that they had been wrongfully obtained. ECF No. 27-1 at 18; ECF No. 34 at 16. But "[i]t is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect [its] liability, if, in equity and good conscience, [it] is not entitled to hold it against the true owner." *Gibbons*, 173 Md. App. at 273 (citing *Plitt v. Greenberg*, 242 Md. 359, 363–64 (1966)); *see also* RESTATEMENT (FIRST) OF RESTITUTION § 123 (1937) (stating that an innocent recipient of property that he could not otherwise lawfully acquire must account to the true owner if he is not a purchaser for value). Here, as the Court has stated, DH Investments did not exchange value for the Loan monies and the Complaint raises an inference that it would be unjust for it to retain the benefit. Although it is true, as Defendant points out, that a defendant's "good faith is a highly relevant factor, it does not, by itself, support a determination as a matter of law that the circumstances of the receipt of the benefit are such as between [the parties] that to retain it would

be unjust." *See Gibbons*, 173 Md. App. at 282 (internal quotation marks omitted). Rather, whether a defendant has been unjustly enriched, and thus must disgorge the benefits it has received, is dependent upon a variety of factors. *See id.* at 282–83. Even assuming that Defendant DH Investments did act in good faith, which the Complaint suggests is not the case, the Court is not prepared to conclude, as a matter of law, that where DH Investments received four million dollars, apparently in exchange for nothing of value, and then used those funds for personal and business purposes, it would not be unjust for it to retain those funds. Thus, the Complaint sufficiently alleges an unjust enrichment claim against DH Investments.

### b.  Babu, Bhupesh Babu, and Bella Batra

Plaintiffs have also sufficiently alleged unjust enrichment against Defendants Babu, Bhupesh Babu, and Batra. First, the Complaint alleges that Plaintiffs conferred a benefit upon these Defendants when funds from the DH Account, where the Loan monies were placed, was used to pay bills for Babu and Batra and was transferred to personal accounts belonging to Babu, Batra, and Bhupesh Babu. ECF No. 1 ¶¶ 50–57. The Complaint also alleges that these Defendants had knowledge of the benefit they received because it was used to pay their personal expenses or transferred to their personal accounts, and under circumstances where they provided no consideration in exchange for the benefit and apparently only received the funds by virtue of a personal relationship with DH Investments, *id.* ¶¶ 50–57, 110–113, the Court is not prepared to conclude as a matter of law that it would not be unjust for Defendants to retain that benefit.

In opposition, Defendants make many of the same arguments as Defendant DH Investments, including that the benefit they received did not come directly from Plaintiffs and they did not know that the money they received belonged to Plaintiffs or was obtained wrongfully. ECF No. 27-1 at 17–18. But, as the Court has stated, it is immaterial that these funds

did not come directly from Plaintiffs and that Defendants had no knowledge of their true source so long as there was no exchange of consideration and Plaintiffs could not, in equity and good conscience, retain the funds. *See Gibbons*, 173 Md. App. at 277, 280. Here, the Complaint clearly states that "Defendants provided nothing of value to Defendant [DH Investments] in consideration for the monies they received." ECF No. 1 ¶ 114. Although Defendants contend that this is a conclusory allegation and therefore insufficient, ECF No. 34 at 14, it is not clear to the Court what more Plaintiffs could have alleged at this stage of the proceedings to demonstrate the *absence* of consideration. Plaintiffs do have the burden to present evidence of lack of consideration, *see Plitt*, 242 Md. at 365, but whether Plaintiffs have done so strikes the Court as an inquiry better left for a later stage of the proceedings, *see id.* at 367 (determining on review of a directed verdict that plaintiff "had presented sufficient evidence of lack of payment" by enriched defendant in exchange for benefit "as would justify taking the case to the jury").

Defendants also contend that the Complaint fails to allege that they hold Plaintiffs' money in particular, as opposed to other money that was in the DH Account. ECF No. 34 at 14. Although Plaintiffs will eventually need to establish through admissible evidence that the benefit conferred upon Defendants Babu, Bhupesh Babu, and Batra "can be traced into [their] account," *see Gibbons*, 173 Md. App. at 274, the Complaint alleges that the Loan was transferred to the DH Account and then sizeable portions of the funds in the DH Account were used to benefit Defendants Babu, Bhupesh Babu, and Batra. These allegations raise a reasonable inference that at least some of the funds used to benefit Defendants stemmed from Plaintiffs' Loan, *see id.* (finding that plaintiff could prevail on its unjust enrichment claim even where wrongfully-

obtained funds were commingled with legitimate funds).[7] Thus, the Complaint sufficiently alleges an unjust enrichment claim against Defendants Babu, Bhupesh Babu, and Batra.

### c. Rebeck Firm, Herman, Refunds Plus, Admas, CJC, Kidane, Branch, and Verghese

The Complaint does not, however, sufficiently allege an unjust enrichment claim against Defendants Rebeck Firm, Herman, Refunds Plus, Admas, CJC, Kidane, Branch, and Verghese. With respect to Defendant Rebeck Firm, the Complaint does not contain sufficient information for the Court to infer that Defendant actually received a benefit. The Complaint suggests that the funds from the DH Account were placed by Defendant Babu into an escrow account held by the firm, *see* ECF No. 1 ¶ 34, suggesting that it was not a benefit conferred upon the firm itself. Without more information regarding the circumstances under which the funds were transferred to the Rebeck Firm, the Court cannot determine whether Plaintiffs have a colorable claim for unjust enrichment. Accordingly, Count I is dismissed as to the Rebeck Firm.

With respect to Defendants Herman, Refunds Plus, Admas, and CJC, the Complaint characterizes the benefit they received as either a loan (for Defendants Refunds Plus, Admas, and CJC) or repayment of a loan (for Defendant Herman), thus raising an inference that any funds these Defendants received were in exchange for value. *See Gibbons*, 173 Md. App. at 273 ("[I]f a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession." (quoting *Plitt*, 242 Md. at 364–65)). Therefore, Count I is dismissed as to Defendants Herman, Refunds Plus, Admas, and CJC.

---

[7] "A special tracing problem occurs when the plaintiff's monies are mingled with funds of the defendant or funds of others." *Gibbons*, 137 Md. App. at 274 n.2 (quoting 2 Dan B. Dobbs, *Law of Remedies* § 6.1(4), at 16 (2d ed. 1993)) (internal quotation marks omitted). Although Plaintiffs may have difficulty tracing the disputed funds to their account if they were commingled in the DH Account, that is an issue on the merits, rather than a question for the Court to resolve at the motion to dismiss stage.

Finally, with respect to Defendants Kidane, Branch, and Verghese, the Complaint contains no allegations from which the Court could infer that "the circumstances of the receipt of the benefit are such … that to retain it would be unjust," *see Shpritz*, 493 A.2d at 640–41, or that these Defendants have "obtained possession of money which, in equity and good conscience, [they] ought not to be allowed to retain," *see Gibbons*, 173 Md. App. at 280 (quoting *Plitt*, 242 Md. at 363–64)). In fact, the only allegations in the Complaint with respect to these three Defendants are that they received funds from the DH Account. There are no additional allegations regarding the circumstances of the transfers, and Plaintiffs have made no attempt to explain how the third element of an unjust enrichment claim has been met with respect to these three Defendants in particular, so the Court cannot determine whether Plaintiffs have a colorable unjust enrichment claim. Thus, Count I is dismissed as to Defendants Kidane, Branch, and Verghese.

### ii.     Conversion (Count II)

Plaintiffs allege that Defendants Babu, DH Investments, Refunds Plus, and the Rebeck Firm are liable for conversion because they retained funds that belonged to Plaintiffs. "Conversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind. The physical act can be summarized as 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Darcar Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261 (2004) (quoting *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560 (1999)). The state of mind element requires, "[a]t a minimum," that the defendant had "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* at 262 (quoting *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414 (1985)). "The defendant may have the requisite

13

intent even though he or she acted in good faith and lacked consciousness of wrongdoing, as long as there was an intent to exert control over the property." *Id.*

With respect to money, "[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion." *Jasen*, 354 Md. at 564 (listing cases). "One reason for the rule is that money is often commingled: 'if a defendant maintains possession of the proceeds in question, but commingles it with other monies, the cash loses its specific identity,' and thus would be considered intangible property." *Roman v. Sage Title Grp., LLC*, 229 Md. App. 601, 609 (Md. Ct. Spec. App. 2016) (quoting *Jasen*, 354 Md. at 566). "An exception exists, however, when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Jasen*, 354 Md. at 564 (citing *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 482 (1986)). Still, Maryland courts have "precluded claims for conversion of funds on the basis that the funds were commingled" because "the plaintiff either never identified a specific dollar amount that was allegedly converted, or the defendant had no obligation to return those funds in the first place." *Roman*, 229 Md. App. at 611 (citing cases); *see also id.* at 609 ("Furthermore, a conversion action 'is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money entrusted to his care….'" (quoting *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 482 (Md. Ct. Spec. App. 1986))).

Here, money is the subject of Plaintiffs' conversion claim and thus the general rule would suggest that the claim is barred. Plaintiffs contend, however, that the exception applies because the Loan transferred to the DH Account is easily identifiable and should have been segregated for a real estate transaction and subsequent recipients of funds from the DH Account knew that fact. ECF No. 33 at 13. Although it may be true that the Loan was identifiable in the DH

Account, the Complaint contains no allegations regarding DH Investments' obligations with respect to those funds, and Plaintiffs themselves admit that they had no written contract with DH Investments with respect to the Loan.[8] Therefore, the funds are not subject to a claim for conversion and Count II is dismissed.

### iii.    Fraud (Count III)

Plaintiffs allege that Defendants Babu, DH Investments, and Herman committed fraud by collecting funds for a real estate project that were not actually used for such a project. To state a claim for fraud, a plaintiff must allege the following: "(1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement; and (5) the plaintiff was damaged as a result." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (citations omitted). The plaintiff must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Federal Rule of Civil Procedure 9(b) requires "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing the "who, what, when, where, and how" of the fraud claim). Despite these heightened requirements, "a court should hesitate to dismiss if it finds (1) that the defendant[s] [have] been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those

---

[8] Allegations that Pal made representations to Plaintiffs about how their investment would be used is no indication of the circumstances under which DH Investments received the funds.

facts." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002) (describing pleading requirements in case of fraudulent conveyance) (internal citations omitted).

Here, Plaintiffs have failed to meet these requirements. Regarding any representations made by Defendants Babu, DH Investments, and Herman to Plaintiffs, the Complaint alleges only that these Defendants created various marketing materials regarding a real estate project, that "Mr. Herman's company, Barrus Real Estate Group, was featured prominently on these fliers," and that Plaintiffs eventually viewed these fliers. ECF No. 1 ¶¶ 26, 27, 28. Critically, however, these allegations lack any information regarding specific, false statements made by Defendant Babu, DH Investments, or Herman, in the marketing materials or otherwise, or how Plaintiffs relied on such false statements, and therefore the Complaint fails to allege fraud against Defendants Babu, DH Investments, and Herman. *See Adams*, 193 F.R.D. at 249–50; *see also Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) ("When a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud.").

To the extent that the Complaint alleges Pal made false statements to Plaintiffs as an agent of Defendants Babu, DH Investments, and Herman, it still fails to state a claim. "Where a plaintiff is seeking to hold a defendant vicariously liability for the acts of its agents, it must allege the factual predicate for the agency relationship with particularity. When an agency relationship is allegedly part of the fraud, the circumstances constituting fraud on the part of the purported principal, which must be pled with particularity under Rule 9(b), [must] include both the facts constituting the underlying fraud and the facts establishing the agency relationship." *Adams*, 193 F.R.D. at 250 (internal citations omitted).

Here, the Complaint alleges only that Defendants Herman and Babu "contacted Pal to assist them in raising funds for a real estate project in Baltimore, Maryland," that "Pal acted as an agent for Herman and Babu," and that Pal, as an agent for Defendants Babu and Herman, represented to Plaintiffs that their investment would be used for a real estate project in Baltimore. ECF No. 1 ¶¶ 24, 25, 128. The conclusory statement that Mr. Pal was Defendants' agent is insufficient to meet the requirements of Rule 8, let alone Rule 9(b), *see Twombly,* 550 U.S. at 555, and general contact between Defendants and Pal is insufficient to demonstrate an agency relationship, *see Adams*, 193 F.R.D. at 252 (finding that allegation that an individual "acted as a representative" for defendants was insufficient to create inference of agency relationship because "it fail[ed] to indicate with particularity the factual predicate for the agency relationship"). Thus, although Pal may have made misrepresentations to Plaintiffs, the Complaint contains no allegations to suggest he did so as an agent of Defendants. Accordingly, Plaintiffs failed to state a claim for fraud against Defendants Babu, DH Investments, or Herman, and Count III is dismissed.

### iv.    Civil Conspiracy (Count IV)

Plaintiffs allege that Defendants Babu and Herman committed civil conspiracy by agreeing to commit fraud against Plaintiffs. To state a claim for civil conspiracy, a plaintiff must allege (1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damage resulting to the plaintiff. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007). "The key question in assessing whether a conspiracy theory has been adequately pled is whether there is adequate factual support for the existence of an agreement to conspire." *See Chambers v. King Buick GMC, LLC,*

17

43 F. Supp. 3d 575, 611 (D. Md. 2014). "A clear agreement to conspire is necessary because the '[i]ndependent acts of two wrongdoers do not make a conspiracy.'" *Id.* (quoting *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S. Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981)). "The complaint should include factual allegations that provide an indication of when and how the agreement was brokered and how each of the defendants specifically were parties to the agreement." *Id.* Maryland courts, however, have "consistently held that conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189 (1995) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 645 n.8 (1994)) (internal quotation marks omitted). Thus, "a conspiracy, standing alone, is not actionable." *Van Royen v. Lacey*, 262 Md. 94, 97 (1971).

Here, the Complaint fails to allege a claim of civil conspiracy. First, as the Court has already concluded, the Complaint fails to allege that Defendants Babu or Herman caused any tortious injury to Plaintiffs. Indeed, the only remaining claim against either Defendant is the unjust enrichment claim against Defendant Babu, but unjust enrichment is equitable, rather than tortious, in nature, *see Hill*, 402 Md. at 297, and therefore it cannot support a claim for civil conspiracy.

Moreover, the Complaint lacks any allegations of a "clear agreement to conspire." Rather, the Complaint alleges in a conclusory fashion that Pal and Defendants Babu and Herman "intentionally conspired to lie to the Plaintiffs and commit various actions, which constituted violations of state and federal criminal law" and "civil torts" and they "combined their efforts to defraud and convert funds belonging to the Plaintiffs." ECF No. 1 ¶¶ 137, 138, 140. Despite alleging that, in September 2017, Defendants Herman and Babu "contacted Pal to assist them in

18

raising funds for a real estate project in Baltimore, Maryland" and "created marketing fliers, which touted the project," *id.* ¶¶ 24, 26, there are no allegations that Defendants agreed to use unlawful or tortious methods, when or how such an agreement came about, or how each defendant was a party to such agreement. *See Chambers*, 43 F. Supp. 3d at 611. The Complaint therefore fails to allege civil conspiracy against Defendants Babu or Herman, and Count IV must be dismissed.

### B.  Failure to Join Necessary Party

Defendants also contend that the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7). Rule 12(b)(7) provides that a case may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). A Rule 12(b)(7) motion proceeds by a two-step inquiry. First, the court must ask "whether a party is necessary to a proceeding because of its relationship to the matter under consideration pursuant to Rule 19(a)." *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999) (citation and internal quotation marks omitted). If the party is necessary, it will be ordered into the action unless it destroys the court's jurisdiction. *Id.* Second, "[w]hen a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *Id.* at 440. The burden is on the moving party to "show that the entity who was not joined is needed for a just adjudication." *Riesett v. Mayor and City Council of Baltimore*, No. GLR-13-1860, 2013 WL 5276553, at *2 (D. Md. Sept. 18, 2013) (quoting *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005)) (internal punctuation omitted). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Ill, Inc.*, 186 F.3d at 441.

Defendants contend that Pal's estate and Morgan Stanley are necessary parties pursuant to Rule 19(a), and therefore Plaintiffs must amend the Complaint to add them as defendants or the Complaint must be dismissed. Under Rule 19(a), a party is necessary in two situations. First, where "the court cannot accord complete relief among existing parties" in that party's absence, Fed. R. Civ. P. 19(a)(1)(A), and second, where "that person claims an interest relating to the subject of the action and is so situated that disposing" of the matter without that party may "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B). Defendants contend that Morgan Stanley and Pal's estate must be joined because they were active participants in the wrongdoing alleged in the Complaint and because Morgan Stanley filed a third-party complaint against Defendant Babu for indemnification and contribution in the FINRA Arbitration, thus subjecting Defendant Babu to multiple obligations were Plaintiffs to prevail in this case and Morgan Stanley to prevail in the third-party complaint. The Court disagrees.

As an initial matter, the only claim remaining in this case is the unjust enrichment claim against Defendants DH Investments, Babu, Bhupesh Babu, and Batra. Even if, as Defendants contend, Morgan Stanley and Pal were actively involved in the wrongdoing alleged in the Complaint, an unjust enrichment claim can be fairly adjudicated without their presence. *See Gibbons*, 173 Md. App at 265 (adjudicating an unjust enrichment claim against an innocent party where the active wrongdoer was not a party to the case).

Additionally, there is no risk that Defendants DH Investments, Bhupesh Babu, or Batra, will be subject to multiple or inconsistent obligations as a result of the third-party complaint in the FINRA Arbitration because they are not named in that complaint. *See Morgan Stanley v.*

20

*Babu*, No. GJH-19-489, ECF No. 14-4. Moreover, whether Defendant Babu is liable to Morgan Stanley for indemnification or contribution with respect to Plaintiffs' conversion, negligent supervision, fraud, breach of contract, RICO, and Virginia Securities Act claims is independent of whether Babu has been unjustly enriched. Thus, there is similarly no risk that he will be subject to multiple or inconsistent obligations. Because Defendants have made no argument that the Court is otherwise unable to "accord complete relief among existing parties," the Court concludes that Morgan Stanley and Pal's estate are not necessary to adjudicate Plaintiffs' remaining unjust enrichment claim. Accordingly, the Complaint will not be dismissed pursuant to Rule 12(b)(7).

### III.     CONCLUSION

For the foregoing reasons, Defendant Herman's Motion to Dismiss is granted and the remaining Defendants' Motion to Dismiss is granted, in part, and denied, in part. Specifically, Counts II, III, and IV are dismissed, and Count I is dismissed as to Defendants Herman, Refunds Plus, CJC, the Rebeck Firm, Kidane, Branch, and Verghese. Count I remains pending against Defendants DH Investments, Babu, Bhupesh Babu, and Batra. A separate Order shall issue.

Date: <u>August 30, 2020</u>                                      <u>        /s/                                 </u>
                                                              GEORGE J. HAZEL
                                                              United States District Judge